UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUDY LEE ODE,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

19-CV-343-LJV
DECISION & ORDER

---

On March 14, 2019, the plaintiff, Judy Lee Ode, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 30, 2019, Ode moved for judgment on the pleadings, Docket Item 10; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on February 11, 2020, Ode responded to the Commissioner's cross-motion, Docket Item 14.

For the reasons stated below, this Court grants Ode's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Ode argues that the ALJ erred in two ways. Docket Item 10-1. She first argues that the ALJ erred in reaching a "highly specific" finding about her residual functioning capacity ("RFC") without a supporting medical opinion. Id. at 18-24. She also argues that the ALJ erred in rejecting the opinion of her treating nurse practitioner and crafting an RFC from his own lay judgment. *Id.* at 24-30. The Court agrees that the ALJ erred in rejecting the nurse practitioner's opinion and accordingly remands the matter to the Commissioner. Because "the remaining issues raised by [Ode] . . . may be affected by

the ALJ's treatment of this case on remand," the Court does not address them here. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003);

## I.     NURSE PRACTITIONER VACCARO

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

In addition to acceptable medical opinions, an ALJ also must consider the opinions of "other sources"—such as nurse practitioners[2]—but is "free to discount" such opinions "in favor of the objective findings of other medical doctors." *Genier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008) (summary order). The ALJ should explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939,

---

[2] When Ode filed her claim in July 2015, nurse practitioners were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment"; but an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] ha[d] seen the individual more often . . . and ha[d] provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]"). Because NP Vaccaro treated Ode for more than three years, an ALJ reasonably could find that her opinions deserve significant weight.

at \*6 (Aug. 9, 2006). In other words, the ALJ must construct "an accurate and logical bridge" between the information in the record and the conclusion that the claimant is not disabled. *Thomas*, 826 F.3d at 961 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)).

20 C.F.R. § 404.1527(c) enumerates several factors that an ALJ should consider in giving weight to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

*Tolliver v. Astrue*, No. 12-CV-042S, 2013 WL 100087, at \*3 (W.D.N.Y. Jan. 7, 2013) (citations omitted). Using those factors to articulate the ALJ's reasoning is more than just a good idea. In *Tolliver*, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned little weight to the opinion of a nurse practitioner who saw the patient far more frequently than did the treating physician. *Id. Cf. Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (holding that "[a]n ALJ's failure to 'explicitly' apply the [section 404.1527(c)] factors when assigning weight" to a treating source opinion "is a procedural error" (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam))).

Here, the ALJ assigned "no weight" to the August 2015 opinion of Ode's treating nurse practitioner, Bridget Vaccaro, N.P.,[3] who concluded that Ode was unable to perform even sedentary work.[4] Docket item 6 at 36. The ALJ explained that NP

---

[3] The ALJ incorrectly referred to NP Vaccaro as "Bridget A. Vaccaro, M.D." *Id.*

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

4

Vaccaro's opinion was "not a function-by-function analysis and a limitation to sedentary work [was] not consistent with the record. [Ode] had mostly normal physical exams throughout the relevant period other than some tenderness and slightly limited range of motion." *Id.* The ALJ did not discuss—and therefore did not give any weight to—NP Vaccaro's May 2015 opinion that Ode could "return to work on a restricted schedule. 4 hours per day 3 days per week starting 5/1/15. N[o] lifting [more than] 10 [pounds,] and no bending, stooping, pushing, [or] pulling." *See id.* at 358.

The ALJ failed to consider several of the section 404.1527(c) factors before assigning "no weight" to NP Vaccaro's opinion. For example, although the ALJ referred to a number of treatment notes in the record, he began with notes from 2015, *see id.* at 33, and never acknowledged that NP Vaccaro had treated Ode at least 16 times between January 2012 and August 2015. *See id.* at 439-47, 457-59, 496-527, 570-73, 591-97, 638-41, 643. Indeed, during that time, NP Vaccaro treated Ode for a wide array of medical problems, including morbid obesity, hyperlipidemia, muscle spasms, cervical spinal stenosis, cervical radiculopathy, low back pain, neck pain, knee pain, arthritis, degenerative disc disease, and shoulder pain. *See, e.g., id.* at 643, 502-06. Nor did the ALJ acknowledge that other providers at NP Vaccaro's practice also had treated Ode at least 32 times between January 2012 and April 2015. *See id.* at 448-56, 460-95, 528-31, 552-59, 563-69, 574-90, 598-637, 642.[5] The ALJ thus failed to address "the length

---

Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

[5] NP Vaccaro and other providers at her practice continued to treat Ode regularly through at least November 2017. *See id.* at 751-967, 992-96.

5

and frequency of the treating relationship," *see Tolliver*, 2013 WL 100087, at *3.  And while the ALJ rejected some of NP Vaccaro's opinions as "not consistent with the record," Docket Item 6 at 36, he did not say what that inconsistent evidence was, and he certainly did not explicitly address "the amount of evidence . . . support[ing] [the] opinion," *Tolliver*, 2013 WL 100087, at *3.

What is more, the ALJ rejected NP Vaccaro's August 2015 opinion in part because it was "not a function-by-function analysis," Docket Item 6 at 36, a conclusion that is difficult to reconcile with his evaluation of the opinion of the consulting physician, Hongbiao Liu, M.D.  Like NP Vaccaro, Dr. Liu also did not provide a detailed function-by-function analysis—indeed, the ALJ explicitly observed that "Dr. Liu's opinion was . . . not specific as to the actual limitations in the claimant's functioning."  *Id.*  But unlike the opinion of NP Vaccaro that received "no weight," Dr. Liu's opinion was given "some" weight."  *See id.*

And even if it were true that the August 2015 opinion was unreliable because NP Vaccaro did not engage in a function-by-function analysis, that still would not support the ALJ's implicit rejection of NP Vaccaro's May 2015 opinion that Ode could "return to work on a restricted schedule.  4 hours per day 3 days per week starting 5/1/15.  N[o] lifting [more than] 10 [pounds,] and no bending, stooping, pushing, [or] pulling."  *Id.* at 358.  True enough, NP Vaccaro did not provide her opinions on the standard form used by the Social Security Administration to solicit medical sources statements.  But if the ALJ wanted the information in that format—or wanted to know exactly what NP Vaccaro meant by "sedentary work" in her August 2015 opinion—he should have asked NP Vaccaro for clarification.  *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)

6

("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))).[6]

Instead, the ALJ simply rejected NP Vaccaro's opinion outright, leaving him with only one medical opinion from which to construct Ode's RFC: the opinion of the consulting physician, Dr. Liu, which the ALJ himself described as "not specific as to the actual limitations in [Ode's] functioning" and to which the ALJ gave only "some" weight. *See* Docket Item 6 at 36. It is far from clear how the ALJ could have used Dr. Liu's opinion that Ode had "mild to moderate limitation[s] [in] prolonged walking, bending, and kneeling," *id.* at 693, to reach his detailed RFC—for example, that Ode could "frequently climb stairs and ramps" or that Ode "must be allowed to alternate between standing and sitting every 30 minutes while remaining on task," *id.* at 32. Stated differently, the ALJ failed to construct "an accurate and logical bridge" between the information in the record and Ode's RFC, *Thomas*, 826 F.3d at 961 (quoting *Roddy*, 705 F.3d at 636), frustrating

---

[6] *See also* 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"); 20 C.F.R. § 404.1512(d)(1) ("Before [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical sources when [she] give[s] [the Commissioner] permission to request the reports."). *Cf. Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner has "a duty to solicit" a "medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)" (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted)).

this Court's efforts to "assess the validity of the agency's ultimate findings and afford [Ode] meaningful judicial review," *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir.2004)).

"Because the ALJ procedurally erred, the question becomes whether . . . the record otherwise provides 'good reasons' for assigning '[no] weight'" to NP Vaccaro's opinion. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

First, and contrary to the ALJ's conclusions, NP Vaccaro's opinions were supported by her own treatment notes. NP Vaccaro opined in August 2015 that "[Ode] ha[d] truly declined since her fall th[at] year. [S]he ha[d]n't . . . returned to work and her physical abilities ha[d] worsened. She ha[d] [a] job where she use[d] her upper body for her work. With her lack of progress, . . . her prognosis [was] fair and[, she was] unable to do even sedentary work." Docket Item 6 at 506. That opinion matched NP Vaccaro's May 2015 opinion that Ode could "return to work on a restricted schedule. 4 hours per day 3 days per week starting 5/1/15. N[o] lifting [more than] 10 [pounds,] and no bending, stooping, pushing, [or] pulling." *Id.* at 358. And both those opinions were well supported by a number of treatment notes. *See, e.g.*, *id.* at 562 (January 2015 finding of "moderate to severe tenderness at bil[ateral] lumbar paraspinal area"); *id.* at 526 (April 2015 finding of "exquisite[ ] tender[ness]" in the cervical spine); *id.* at 518, 521 (May 2015 report of "sharp, deep, intermittent" pain in the low back that Ode rated as an 8 out of 10; finding of "exquisite[ ] tender[ness]" in the cervical spine); *id.* at 507 (July

2015 note that Ode's "pain ha[d] gotten worse compared to her last visit," that "pain [management] told [Ode] they [couldn't] help her," and that Ode described the pain as "miserable"); *id.* at 812 (June 2016 finding of "exquisite[ ] tender[ness] in the cervical spine; diminished sensation in the left arm, and "posterior left shoulder tenderness, producing weakness and tingling in arm"; again opining that Ode was "unable to do even sedentary work").

NP Vaccaro's opinions also were supported by the treatment notes of Ode's other medical providers. For example, in April 2015, neurologist Bennet Myers, M.D., observed "[m]oderate swelling [in Ode's] upper thoracic paraspinal region with moderate to severe tenderness" and diagnosed "[p]rominent dysesthesias [nerve damage] [in her] left upper extremity." *Id.* at 331; *see also id.* at 327 (same in May 2015). And Martin R. Koslosky, P.T., found decreased range of motion in Ode's cervical spine in April 2015. *Id.* at 980; *see also id.* at 981-83 (same in November and December 2015); *id.* at 649-51 (June 2015 note of physiatrist Leonard Kaplan, D.O., finding decreased range of motion in the cervical and lumbar spine, as well as "[d]iffuse tenderness of the thoracic paraspinals").

To the extent the ALJ might have relied on the opinion of Dr. Liu, that opinion does not otherwise provide substantial evidence supporting the ALJ's conclusions. As an initial matter, the ALJ gave Dr. Liu's opinion only "some" weight because it was "not specific," and, as noted above, it did not support many of the ALJ's detailed RFC determinations. Docket Item 6 at 36. More importantly, although the opinion of a consultative examiner can in some circumstances provide substantial evidence in support of an ALJ's opinion, *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir.

1983), the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Estrella*, 925 F.3d at 98 (quoting *Selian*, 708 F.3d at 419)). That admonition seems particularly appropriate here, where Ode suffered from a multitude of chronic and overlapping health conditions, and her long-term treatment providers—those most able to "provide . . . detailed, longitudinal picture[s] of [her] medical impairments," *see* 20 C.F.R. § 416.913(a) (2015)—agreed that her conditions indeed were severe and disabling. *See also Tolliver*, 2013 WL 100087, *3 ("[S]uch a familiar relationship may warrant apportioning more weight to [the nurse practitioner] than [the] consultative examiner . . . , on whom [the ALJ] heavily relied.").

Finally, the Court finds that remand is appropriate here because the ALJ's error in rejecting NP Vaccaro's opinion inured to Ode's prejudice. Contrary to NP Vaccaro's opinion that Ode could not lift more than ten pounds or bend, stoop, push, or pull (May 2015) and that Ode was limited to sedentary work (August 2015), the ALJ found that Ode

> [could] perform light[7] work . . . except she can frequently push or pull and reach overhead with the left upper extremity; can frequently reach overhead with the right upper extremity; can frequently stoop; can occasionally kneel, crouch, and crawl; can frequently climb stairs and ramps; can never climb ladders, ropes, and scaffolds; can never be exposed to vibrations; must be allowed to alternate between standing and sitting every 30 minutes while remaining on task . . . .

Docket Item 6 at 32. In other words, the ALJ found that Ode could lift far more than NP Vaccaro believed she could and that she could bend, stoop, push, or pull with much greater frequency.

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be

10

And the testimony of the vocational expert suggests that had the ALJ instead assigned greater weight to NP Vaccaro's opinion—and therefore found a more restricted RFC—the vocational expert may well not have concluded that Ode could find a job in the national economy. More specifically, the vocational expert testified that based on her RFC, Ode could find work as a cashier, office helper, or marker. *Id.* at 68. All three of these jobs were classified as "light work." *Id.* Because the ALJ did not pose any hypotheticals that limited Ode to sedentary work, as recommended by NP Vaccaro, this Court cannot determine whether any jobs suitable to Ode's other limitations are available in the national economy. *See id.* at 67-71.

In short, the ALJ erred in rejecting the opinions of NP Vaccaro and instead crafted an RFC based on his own lay judgment. Because NP Vaccaro reasonably opined that Ode was far more limited in her ability to perform certain workplace functions than reflected in the ALJ's RFC, the Court remands the matter to the ALJ. If the ALJ is not satisfied with the form or format in which NP Vaccaro provided her prior opinions, the proper course of action is to solicit a new opinion from NP Vaccaro.

## II.   SPECIFIC RFC FINDINGS

The Court "will not reach the remaining issues raised by [Ode] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the

---

very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should ensure that any specific RFC limitations, such as the frequency with which Ode needs to "alternate between standing and sitting . . . while remaining on task," *see* Docket Item 6 at 32, are based on specific medical evidence in the record, not the ALJ's "own surmise," *see Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Ode's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   July 28, 2020
         Buffalo, New York

                                                   */s/ Hon. Lawrence J. Vilardo*
                                                   LAWRENCE J. VILARDO
                                                   UNITED STATES DISTRICT JUDGE